**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CHURCH ON THE MOVE, INC.,

    Plaintiff,

v.                                                            CV No. 18-627 CG/SMV

BROTHERHOOD MUTUAL
INSURANCE COMPANY,

    Defendant.

## ORDER DENYING MOTION TO AMEND

**THIS MATTER** is before the Court on Defendant Brotherhood Mutual Insurance Company's *Motion to Amend and/or clarify Brotherhood Mutual Insurance Company's Expert Disclosures Based upon Plaintiff's Rebuttal Expert Report* (the "Motion"), (Doc. 59), filed August 16, 2019; Plaintiff Church on the Move, Inc.'s *Response to Defendant's Motion to Amend and/or Clarify its Expert Disclosures Based on Plaintiff's Rebuttal Expert Report* (the "Response"), (Doc. 62), filed August 30, 2019; and Defendant's *Reply to Plaintiff's Response to Motion to Amend and/or Clarify Brotherhood Mutual Insurance Company's Expert Disclosures Based upon Plaintiff's Rebuttal Expert Report* (the "Reply"), (Doc. 64), filed September 13, 2019.

On September 13, 2019, the parties consented to the undersigned to conduct dispositive proceedings in this matter and to order entry of a final judgment, in accordance with 28 U.S.C. § 636(c). (Doc. 65). After reviewing the Motion, the parties' briefing, and the relevant law, the Court finds Defendant's *Motion to Amend and/or clarify Brotherhood Mutual Insurance Company's Expert Disclosures Based upon Plaintiff's Rebuttal Expert Report*, (Doc. 59), is not well-taken and shall be **DENIED**.

**I.      Background**

This case arises from a May 2017 wind and hail storm that damaged Plaintiff's property in Roswell, New Mexico. (Doc. 1 at 2). After the storm, Plaintiff filed a damage claim with its insurance company, Defendant Brotherhood Mutual Insurance. *Id.* at 4. Plaintiff was dissatisfied with Defendant's investigation of the storm damage and the ultimate cash value they alleged was sufficient to cover the damaged property. *Id.* at 5. As a result, Plaintiff filed suit alleging breach of contract, violations of the Unfair Insurance Practices Act and the Unfair Practices Act, and bad faith. *Id.* at 6-12.

In November 2018, the parties were placed on a "150-day" discovery track, with an anticipated discovery termination date of April 1, 2019. (Doc. 20 at 1). The Court set forth all relevant deadlines associated with discovery and pretrial matters during the parties Rule 16 Scheduling Conference, (Doc. 19), and memorialized those dates in its November 2018 *Scheduling Order*, (Doc. 20). The Court again directed the parties to refer to the *Scheduling Order* for all pertinent pretrial dates in its *Order Adopting Joint Status Report*, (Doc. 21).

Among the dates memorialized in the Court's *Scheduling Order* was Defendant's March 1, 2019 deadline to "identify in writing any expert witness to be used by such parties at trial and to provide expert reports pursuant to Fed. R. Civ. P. 26(a)(2)(B)." (Doc. 20 at 2). These deadlines were later extended at the request of the parties, and Defendant was ordered to identify expert witnesses and provide expert reports by March 31, 2019. (Doc. 29 at 1). At the parties' March 19, 2019 Status Conference, the Court specifically inquired about the current status of the parties' experts. (Doc. 37 at 1). Counsel for both parties confirmed they were "prepared to provide their expert reports

by the deadlines." *Id.*

In the present Motion, Defendant requests leave of court to "amend and/or clarify its expert designation," seeking to modify Jim Koontz' designation from a "non-retained expert" to a "retained expert." (Doc. 59 at 1). Defendant explains that currently, Mr. Koontz' designation as a non-retained expert prevents him from "defend[ing] the merits of his report," against Plaintiff's rebuttal expert, Matt Phelps. *Id.* In response, Plaintiff alleges that Defendant's delayed decision to designate Mr. Koontz as a retained expert is prejudicial to their trial preparation efforts and strategy decisions. (Doc. 62 at 10-11). According to Plaintiff, Defendant's failure to tactically plan for challenges to Mr. Koontz' report should not be excused five months after the expert witness disclosure deadline has elapsed. *Id.* at 9.

**II.   Analysis**

Federal Rule of Civil Procedure 26 governs disclosure of expert witnesses and expert testimony. Rule 26 provides two different types of expert witnesses, those who are "retained or specially employed" under 26(a)(2)(B), and those who are "not retained" under 26(a)(2)(C). The distinction between retained and non-retained expert witnesses relates to the scope of testimony and opinions they may proffer for use at pretrial and trial proceedings. *See Skarda v. Johnson & Johnson*, No. 9-1186, 2014 WL 12792345, at *3 (June 30, 2014 D.N.M. 2014). Specifically, a non-retained expert may only discuss his or her opinions that were formed during their participation in the underlying events already disclosed in the case. *Id.* at *3. For example, a non-retained expert doctor can only testify about the scope of their actual care and treatment of the patient, they cannot render opinion testimony concerning the appropriateness of the care and treatment the

3

patient generally received. *Id.* (citing *Wreath v. United States*, 161 F.R.D. 448, 450 (D. Kan. 1995)).

The scope of an expert's testimony is therefore defined by whether he or she is classified as a retained or non-retained expert, and each classification requires differing preparation and disclosures to the Court and opposing counsel. Fed. R. Civ. P. 26(a)(2)(B) (explaining that disclosure of retained experts "must be accompanied by a written report," which must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," and other criteria). If a party fails to identify an expert witness under Rule 26(a), they cannot use that witness's testimony during pretrial or trial proceedings unless the failure "was substantially justified or is harmless." Fed. R. Civ. P. 36(c)(1).

Whether a party's failure to comply with Rule 26(a) is "justified or harmless" is "entrusted to the broad discretion of the district court." *Jacobsen v. Deseret Book Company*, 287 F.3d 936, 953 (10th Cir. 2002). In reaching this decision, "a district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness[]" of the party's non-disclosure. *Id.* Nonetheless, the court should consider the following pertinent factors: (1) the prejudice to the opposing party; (2) "the ability of the party to cure the prejudice;" (3) the disruption to trial; and (4) the "moving party's bad faith or willfulness." *Id.*

Here, Defendant contends Plaintiff is not prejudiced "whatsoever" by Mr. Koontz' changing expert classification for a number of reasons, including because Plaintiff has known of Mr. Koontz' report since 2017 and Plaintiff would be able to take Mr. Koontz' deposition. (Doc. 59 at 6-7). Plaintiff, however, argues that allowing Defendant to modify

4

its expert disclosures five months after the deadline would be prejudicial because Plaintiff has already designated its experts based on Defendant's prior disclosures. (Doc. 62 at 11-12). In addition, Plaintiff alleges it will suffer harm by being forced to depose Mr. Koontz at length after the discovery deadline has elapsed. *Id.* at 12. The Court agrees with Plaintiff on the prejudice factor: Defendant's failure to use foresight and plan for Plaintiff's trial strategy should not be a mistake borne by Plaintiff, requiring it to expend unexpected time, money, and additional resources to remedy a mistake that can only be attributed to Defendant.

The second factor, the ability to cure the prejudice suffered by Plaintiff, also weighs in favor of denying Defendant's Motion. Indeed, Defendant's own suggestion is to have Plaintiff, who would seemingly bear the expense, depose Mr. Koontz. (Doc. 59 at 4) (explaining that Defendant "invite[d] Plaintiff to take Mr. Koontz' deposition because Mr. Koontz would discuss his own report and defend his report from the type of criticism Mr. Phelps had leveled against Mr. Koontz's report."). This is assuming the Court would permit a deposition three months after the discovery deadline, absent any evidence proffered by Defendant that good cause exists permitting such an untimely deposition. *See* Fed. R. Civ. P. 16(b)(4); *see also Gorsuch, Ltd. B.C. v. Wells Fargo Nat. Bank Association*, 771 F.3d 1230, 1240 (10th Cir. 2014) (explaining the Rule16(b)(4) "good cause standard… requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts.") (internal citation and quotations omitted).

In addition, if the Court granted Defendant's Motion, it would then be unfair to require Plaintiff to move forward without the opportunity to amend its rebuttal witness

5

disclosure or otherwise respond to Defendant's untimely expert report. The Court would essentially have to rewind the clock several months, to allow both parties an equal opportunity to present competing witnesses.

Next, while Defendant filed its Motion before a trial was scheduled in this matter, permitting an amendment to its expert witness disclosures would inherently delay pretrial and trial proceedings. At a minimum, the Court would need to authorize additional depositions and provide Plaintiff an opportunity to either amend its designated rebuttal expert's report or otherwise be granted a similar allowance. Extending discovery in this regard would require extending pretrial deadlines and permitting additional time to file any necessary pretrial motions. The third factor, therefore, also weighs in favor of denying Defendant's Motion.

Finally, the Court finds the fourth factor also weighs in favor of denying Defendant's Motion. While Defendant has not demonstrated "bad faith" or "willfulness" in delaying its expert designation, it has demonstrated, at the very least, a lack of foresight and poor planning. Moreover, Defendant has not provided a justification for why it should be granted the "right" to amend its expert disclosures five months late, other than to suggest that it was relying on Plaintiff to depose its witness so the information it needs at trial would be ascertained at Plaintiff's expense. *See* (Doc. 59 at 3-4).

Each of the relevant factors before the Court weigh in favor of denying Defendant's untimely request to change its expert classification for Mr. Koontz. While Defendant attempts to paint its "Motion to Amend" as the consequence of Plaintiff's inaction, it is axiomatic that opposing counsel should not depend on its adversary to

elicit the testimony it needs at trial from its own expert. In sum, based on Plaintiff's demonstrated prejudice, coupled with Defendant's failure to provide a substantial justification for its delay in recharacterizing its expert classification, the Court finds Defendant's Motion should be denied.

### III. Conclusion

Based on the foregoing, the Court finds Defendant Brotherhood Mutual Insurance Company's *Motion to Amend and/or clarify Brotherhood Mutual Insurance Company's Expert Disclosures Based upon Plaintiff's Rebuttal Expert Report*, (Doc. 59), shall be **DENIED**.

**IT IS SO ORDERED**.

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE